**Apolinar Montero-Sánchez, OSB No. 181872**
apolinar@oregonabogada.com
**Lourdes Sánchez, OSB No. 974795**
lourdes@oregonabogada.com
Law Offices of Lourdes Sánchez, P.C.
630 Lincoln Street
Eugene, Oregon 97401
Phone: (541) 349-8110
Fax:    (541) 686-2236

**Keith Reed, OSB No. 205506**
keith@larwick.com
**Derek Larwick, OSB No. 120334**
derek@larwick.com
LARWICK LAW FIRM
1190 West 7th Avenue
Eugene, OR 97402
(541) 600-4598
Fax: (541) 600-4598

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JOSEPH JOHNSON**,<br><br>                Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**, an Oregon municipal corporation, and **AMY LI**, an individual, **COLBY PANTER**, an individual, **RYLEE DRAPER**, an individual, **JOHN BARTLETT**, an | No. 25-cv-00493<br><br>**COMPLAINT**<br><br>(Civil Rights/State Law/Damages)<br><br>DEMAND FOR JURY TRIAL |

individual, **KAYLA POSTULA**, an individual, **MICHELLE PETTY**, an individual, **ADI RAMIC**, an individual, **TAYLOR WOODS**, an individual, and **JOHN DOES 1-9,** in their individual capacities,

Defendants.

# INTRODUCTION

1. Several nights of the week, patrons enjoy the nightlife and entertainment located in the "Old Town" neighborhood of Portland, Oregon. On the night of March 24th, 2023, Plaintiff Joseph Johnson, along with his friends Bobby Patterson, Sharell Jacobus, and Kiara Taylor – all of whom are African American – were among those patrons that evening. They all arrived in the same vehicle, a rented White Chrysler 300 ("Chrysler"), that was rented by Mr. Patterson who was visiting from out of town.

2. During a nighttime foot patrol, Officers Rylee Draper and Kayla Postula observed a black pistol located on the floor in the backseat of the parked Chrysler and, from outside the vehicle, officers were able to identify the firearm's serial number.

3. Officer Draper then ran the Chrysler's license plate and discovered it was a rental. She also noted a placard from a local hotel hanging from the rearview mirror. The events that followed can only be described as an ambush.

4. After being notified of the situation by Officers Draper and Postula, a group of Portland Police officers concocted a plan to disable the unoccupied Chrysler. The method chosen was typically reserved for high-speed pursuits: Officers placed spike strips behind each tire of the vehicle and then waited for the return of its occupants.

5. The four friends returned to their vehicle around 2:00 AM, unchallenged by police and allowed to get inside the vehicle with the suspected stolen firearm. As they began to reverse, all four tires of the vehicle simultaneously deflated. At this point, officers

sprang into action, arresting Joseph Johnson and Bobby Patterson. The female passengers, Sharell Jacobus and Kiara Taylor, were detained but not arrested.

6.  Despite the initial claim that the firearm was stolen, no charges were filed against any of the occupants, and all were released after being detained.

7.  Following the incident, the Portland Police officers involved provided minimal information in their police reports to justify their actions that night. Of the more than a dozen officers present at the scene, only three filed a report or written statement. Notably, none of those reports mentioned the use of spike strips to immobilize the Chrysler.

8.  None of the officers involved reported the arrests of Joseph Johnson or Bobby Patterson. The only documentation containing Joseph Johnson's name is a Property/Evidence Receipt, issued to him after Defendant Michelle Petty confiscated his lawfully possessed firearm under duress.

## NATURE OF ACTION

9.  Pursuant to 42 U.S.C. § 1983, Plaintiff alleges the deprivation of Joseph Johnson's rights as protected by the state and federal constitutions and statutes. Plaintiff seeks economic, non-economic, and punitive damages and equitable remedies, including attorney fees and litigation expenses/costs, which further includes expert witness fees and expenses in an amount to be determined by a jury trial.

10. Under this Court's supplemental jurisdiction, Plaintiff seeks economic and non-economic for his pendant state law claims, in an amount to be determined by a jury trial.

## JURISDICTION & VENUE

11. This court has jurisdiction over Plaintiff's federal claims by virtue of 28 USC §§ 1331 and 1343, and over Plaintiff's state claims by virtue of 28 U.S.C. § 1367.

12. Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## TORT CLAIM NOTICE

13.   In accordance with ORS 30.275, Plaintiff properly served defendants with a tort claim notice within 180 days of the incident described herein.

## PARTIES

14.   Plaintiff Joseph Johnson (hereinafter "Mr. Johnson") is and at all relevant times was, a citizen of the Unites States of America and a resident of Portland, Oregon.

15.   At all material times herein, Defendant City of Portland ("City") is and was a municipal subdivision of the State of Oregon. The City is responsible under state laws for the acts and omissions of its law enforcement officers and other employees, including those whose conduct is at issue herein. As a local government entity, the City is a "person" pursuant to 42 U.S.C. § 1983. The Portland Police Bureau is the law enforcement agency for the City of Portland. At all material times, City of Portland employed Amy Li, Colby Panter, Rylee Draper, John Bartlett, Michelle Petty, Kayla Postula, Adi Ramic, Taylor Woods, and John Does 1-9.

16.   Amy Li is and at all material times herein was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of her employment. On information and belief, she is a citizen and resident of the State of Oregon. Amy Li is sued in her individual capacity only.

17.   Colby Panter is and at all material times herein was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of his employment. On information and belief, he is a citizen and resident of the State of Oregon. Colby Panter is sued in his individual capacity only.

18.   Rylee Draper is and at all material times herein was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of her employment. On information and belief, she is a citizen and resident of the State of Oregon. Rylee Draper is sued in her individual capacity only.

19. John Bartlett is and at all material times was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of his employment. On information and belief, he is a citizen and resident of the State of Oregon. John Bartlett is sued in his individual capacity only.

20. Michelle Petty is and at all material times herein was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of her employment. On information and belief, she is a citizen and resident of the State of Oregon. Michelle Petty is sued in her individual capacity only.

21. Adi Ramic is and at all material times herein was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of his employment. On information and belief, he is a citizen and resident of the State of Oregon. Adi Ramic is sued in his individual capacity only.

22. Kayla Postula is and at all material times herein was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of her employment. On information and belief, she is a citizen and resident of the State of Oregon. Kayla Postula is sued in her individual capacity only.

23. Taylor Woods is and at all material times herein was a police officer with the Portland Police Bureau and an employee of the City, acting under color of law and within the course and scope of his employment. On information and belief, he is a citizen and resident of the State of Oregon. Taylor Woods is sued in his individual capacity only.

24. Defendants John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, John Doe 8, and John Doe 9 (hereinafter "Doe Defendants") were police officers with the Portland Police Bureau, acting in the course and scope of their employment and under color of law at the time of the events alleged herein. The Doe Defendants were not fully identified in police reports and, therefore, are not yet fully known to plaintiff. Each is sued in his or her individual capacity.

## FACTUAL ALLEGATIONS

25. On the evening of March 24, 2023, Joseph Johnson and three friends went to the nightclub Shake, located in the Old Town neighborhood of Portland, Oregon.

26. Joseph Johnson drove to the location in a rented white Chrysler 300 ("Chrysler"). In the vehicle with Mr. Johnson was Bobby Patterson, Sharell Jacobus, and Kiara Taylor. The Chrysler was parked on NW Couch Street, facing westbound, near NW 4th Avenue in Portland, Oregon.

27. At some point between the night of March 24th, 2023, and the early morning of March 25th, 2023, Portland Police Officers Rylee Draper, and Kayla Postula observed a black firearm laying on the rear floorboard of the parked and unoccupied Chrysler.

28. Through the window of the Chrysler, Officer Draper stated that she was able to observe the serial number of the black firearm located on the floor of the backseat. Officer Postula also stated that she observed the serial number.

29. Officers Draper and Postula determined that the serial number belonged to a firearm that was flagged as stolen. Officer Draper identified the firearm as being a Springfield Model XD .40 CAL pistol.

31. After running the license plate of Chrysler, Officer Draper discovered the car was a rental vehicle. She also noticed that there was a placard for a local hotel hanging from the vehicle's rear-view mirror.

32. Officers Draper and Postula radioed Officer Bartlett and his partner Officer Li and told them that a stolen firearm was located in the Chrysler.

33. Officers Bartlett and Li, together with Officers Draper and Postula and other Doe Defendants then devised a plan to immobilize the Chrysler by placing spike strips beneath each of the four tires of the parked and unoccupied vehicle.

34. According to Portland Police Directive 0630.05: Vehicle Intervention Strategies are "[t]actics which may be used to stop or reduce the speed of a fleeing vehicle

in an attempt to reduce safety risks posed to the community, the suspect, and members (e.g. boxing in, pursuit intervention technique, ramming, spike-strips)." The same directive defines spike strips as, "[d]evices used to deflate tires in a controlled fashion."

35. At some point, Office Bartlett cleared the NCIC hit for the pistol bearing the serial number XD338334.

37. Officers Bartlett, Li, Draper, and Postula and other Doe Defendants then waited for an undetermined amount of time before the vehicle's occupants returned.

38. On March 25, 2023, at approximately 2:00am, Plaintiff Joseph Johnson, Mr. Patterson, Ms. Jacobus, and Ms. Taylor, all returned to the Chrysler. Neither Mr. Johnson nor the others were aware that Portland Police officers had placed spike strips behind each tire of the Chrysler and were waiting for the occupants to return.

39. When Mr. Johnson reversed the Chrysler the spike strips blew out all four tires.

40. After exiting the vehicle to inspect what had happened, Mr. Johnson was approached by John Doe 1 who forcibly detained Mr. Johnson by grabbing him and then shoving him onto the hood of a police vehicle. Mr. Johnson was handcuffed and told he was under arrest for suspicion of a stolen weapon.

41. As Mr. Johnson was being arrested, he denied being the owner of the Springfield pistol. Mr. Patterson immediately claimed ownership of the Springfield pistol.

42. During the arrest, John Does 1 and 2 confirmed that Mr. Johnson did not have a criminal record.

43. While being placed under arrest, Mr. Johnson informed John Doe 1 and John Doe 2 that he was licensed to carry a concealed weapon and that his license was located in his wallet.

44. Mr. Johnson also informed officers that he has 'MS' (multiple sclerosis) and asked officers to be gentle. Despite this, Mr. Johnson was placed in the back of a police vehicle with his hands handcuffed behind his back for roughly 30 minutes.

45. The arrest of Mr. Johnson was unlawful, intentional and unreasonable in light of the information available to officers at the time.

46. While under arrest, Mr. Johnson informed police that he had a firearm stored in the glove compartment of the Chrysler. The firearm, a Glock 43X, serial number BYNX527, was located by officers where Mr. Johnson described.

47. Mr. Johnson was told by another officer, John Doe 3, that he had the choice to surrender the firearm or go to jail.

48. Despite his valid license to possess a concealed weapon and despite the lack of legal justification to confiscate his firearm, Mr. Johnson surrendered his firearm under unlawful threat of going to jail.

49. Officer Petty then seized Mr. Johnson's firearm. The property receipt number was A223846.

50. The intentional seizure of Mr. Johnson's firearm by Defendant Michelle Petty and other Doe Defendants was without a warrant, without any exception to the warrant requirement, and was unreasonable in light of all the information available to Defendants.

51. Mr. Johnson's firearm was kept by the Portland Police Bureau and only returned to Mr. Johnson sometime later.

52. The Police Report for Case Number GO 42 2023-77064 was the only report generated by officers in response to the incident described above.

53. The report for Case Number GO 42 2023-77064 does not list Joseph Johnson or Bobby Patterson as subjects of investigation; instead, it lists Kiara Taylor and Sharell

Jacobus. Johnson and Patterson are only mentioned in a supplemental report as the driver and passenger, respectively, of the Chrysler.

54. The report for Case Number GO 42 2023-77064 omits the following facts:

    a. Mr. Johnson's arrest;

    b. Mr. Patterson's arrest;

    c. Method used to immobilize the vehicle; and,

    d. Legal justification for seizing Mr. Johnson's Glock firearm;

55. Despite being the respective owners of the firearms located in the Chrysler, neither Plaintiff nor Mr. Patterson were charged with any crimes related to this incident. There were no criminal charges brought against any of the occupants of the Chrysler.

56. None of the Defendant officers involved with the incident described above reported or otherwise documented the use of spike strips to immobilize the parked and unoccupied Chrysler.

57. Portland Police Directive 0900.00 requires that Officer's reporting duties include writing reports that:

> accurately and objectively depict the facts of each incident, the results of the member's investigation and any member action taken. Reports shall include all exculpatory information and also contain reference to the disposition of any property or evidence taken into custody, the results of records searches, witness statements and/or any other pertinent information.

and:

> provide a complete chronological description of the details and results of the investigation.

58. In violation of Portland Police Directive 0900.00, Officer Postula failed to write a report describing her actions that evening. She made no report of her observations about the firearm in the Chrysler, nor did she make a report concerning her efforts to immobilize the vehicle and of the arrest of Mr. Johnson.

59.     In violation of Portland Police Directive 0900.00, Officer Draper failed to write a complete report describing her actions that evening. She made no mention of her efforts to immobilize the vehicle and of the arrest of Mr. Johnson.

60.     In violation of Portland Police Directive 0900.00, Officer Bartlett failed to properly document his actions that evening. He made no report concerning his actions to immobilize the vehicle, nor did he report the arrest of Mr. Johnson or Mr. Patterson.

61.     In violation of Portland Police Directive 0900.00, Officers Petty, Ramic, and Woods failed to write a report describing their actions that evening.

62.     In violation of Portland Police Directive 0900.00, all Doe Defendants failed to write a report describing his or her actions that evening.

63.     The stolen pistol served as pretextual justification for Defendant officers to unlawfully and unreasonably detain, search, seize, and arrest Mr. Johnson.

64.     Defendant officers knew that they did not have probable cause to detain, search, seize, and arrest Mr. Johnson.

65.     Defendant officers should have known that they did not have probable cause to detain, search, seize, and arrest Mr. Johnson.

66.     The above-described stop, detention, search, seizure, and false arrest were intentional and were done without probable cause or lawful basis, in violation of Mr. Johnson's Constitutional rights.

67.     As a result of the above-described battery, Mr. Johnson suffered injuries to his hands, and suffered, continues to suffer, and will in the future suffer from embarrassment, frustration, anger, humiliation, a sense of personal violation, racial stigmatization, and increased vulnerability, all to his noneconomic damages in an amount to be determined by a jury.  Plaintiff has sought and received mental health treatment for trauma related to this incident.

68. The jury should be allowed to consider punitive damages in order to deter Defendant officers from this conduct and similar conduct by Defendant officers and others similarly situated in the future.

### FIRST CLAIM FOR RELIEF (1983)

(42 USC §1983 – Fourth Amendment Violation – Unreasonable Search and Seizure)

69. All paragraphs above are incorporated herein by reference as though fully set forth.

70. On information and belief, Defendant officers, and each of them, intentionally searched and seized Plaintiff's person after they knew or should have known that they did not have probable cause to search or the arrest of Plaintiff. Conducting a search and seizure of Plaintiff's person and property was unreasonable in light of the circumstances. After discovery in this case, Plaintiff intends to identify the specific officers involved in each action.

71. As described above Defendant officers stopped, searched, and seized Joseph Johnson's person and property in violation of Plaintiff's right not to be subject to unreasonable search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution, which caused Mr. Johnson to suffer embarrassment, frustration, anger, humiliation, a sense of personal violation, racial stigmatization, and increased vulnerability.

72. This claim is made under 42 U.S.C. § 1983 against all individual Defendant officers.

73. Plaintiff also seeks recovery of his attorney fees and litigation expenses and costs against Defendants pursuant to 42 U.S.C. § 1988.

### SECOND CLAIM FOR RELIEF (1983)

(42 USC §1983 – Fourth Amendment Violation – False Arrest)

74. All paragraphs above are incorporated herein by reference as though fully set forth.

75. As described above Defendant officers, and each of them, stopped, detained, and arrested Joseph Johnson without probable cause and in violation of Plaintiff's right not to be subject to unreasonable detention as guaranteed by the Fourth Amendment to the United States Constitution, which caused Mr. Johnson to suffer embarrassment, frustration, anger, humiliation, a sense of personal violation, racial stigmatization, and increased vulnerability. After discovery in this case, Plaintiff intends to identify the specific officers involved in each action.

76. This claim is made under 42 U.S.C. § 1983 against all individual Defendant officers.

77. Plaintiff also seeks recovery of his attorney fees and litigation expenses and costs against Defendants pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF (Common Law)

(False Arrest – Defendant City of Portland and all Individual Defendants)

78. All paragraphs above are incorporated herein by reference as though fully set forth.

79. As described above, Defendants' detention and confinement of Joseph Johnson without a warrant and without probable cause was intentional. Plaintiff was aware of the detention and confinement. Given the totality of circumstances known to officers at the time, the detention and confinement was unreasonable and unlawful under Oregon common law. As a result, Mr. Johnson suffered embarrassment, frustration, anger, humiliation, a sense of personal violation, racial stigmatization, and increased vulnerability. The claim for false arrest is made against Defendant City of Portland and all individual Defendants.

80. As a result of the above, Plaintiff is entitled to an award of economic and noneconomic damages against defendants, in amounts to be determined at trial. Plaintiff is seeking damages in excess of statutory caps on damages set out in Oregon Revised Statutes §§ 30.271, 30.272, or 30.273.

### FOURTH CLAIM FOR RELIEF

(Battery – Defendant City of Portland and all Individual Defendants)

81. All paragraphs above are incorporated herein by reference as though fully set forth.

82. In effectuating their unlawful arrest, Defendants intended to grab, handcuff, and detain Mr. Johnson.

83. Defendants' actions caused both harmful and offensive contact to Mr. Johnson.

84. As a result of being grabbed, handcuffed, and held by Defendants, Plaintiff Joseph suffered indignity, embarrassment, frustration, anger, humiliation, a sense of personal violation, racial stigmatization, and increased vulnerability. The claim for battery is made against Defendant City of Portland and all individual Defendants.

85. As a result of the above, Plaintiff is entitled to an award of economic and noneconomic damages against defendants, in amounts to be determined at trial. Plaintiff is seeking damages in excess of statutory caps on damages set out in Oregon Revised Statutes §§ 30.271, 30.272, or 30.273.

\* \* \* \* \*

**WHEREFORE,** Plaintiff prays for relief from this court as follows:

1. Assume jurisdiction in this matter over Plaintiff's claims;
2. Award Plaintiff's economic and non-economic damages against Defendants in amounts to be determined at trial in accordance with the allegations set forth above;

3.  Award punitive damages against Defendants in an amount the jury concludes is appropriate;

4.  Award Plaintiff his attorney fees and litigation expenses/costs against Defendants in accordance with the allegations set forth above; and

5.  Grant such other relief as may be just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Dated March 24, 2025.

                LARWICK LAW FIRM

                */s/ Keith Reed*
                Keith Reed, OSB No. 205506
                Email: keith@larwick.com
                Derek Larwick, OSB No. 120334
                Email: derek@larwick.com

                Apolinar Montero-Sánchez, OSB No. 181872
                Email: apolinar@oregonabogada.com
                Lourdes Sánchez, OSB No. 974795
                Email: lourdes@oregonabogada.com

                Attorneys for Plaintiff